

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2008

# Grant v. Wilson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2727

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Grant v. Wilson" (2008). *2008 Decisions.* Paper 1133.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1133

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-2727

DEMETRIUS J. GRANT,
Appellant

v.

HARRY T. WILSON,
Warden

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 04-cv-1904
District Judge: The Honorable Arthur J. Schwab

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 22, 2008

Before: SMITH, FISHER,
and NYGAARD, *Circuit Judges*

(Filed: May 28, 2008)

OPINION

SMITH, *Circuit Judge*.

Demetrius J. Grant appeals from the District Court's denial of his Petition for a

Writ of Habeas Corpus.[1] This Court granted a certificate of appealability on two issues only: (1) whether there was ineffective assistance of trial counsel by not objecting to the asserted hearsay testimony of Kevin McKnight, Stephen Hitchings and Marvin Paul;[2] and (2) whether there was ineffective assistance of trial counsel by not attempting to impeach the credibility of Marvin Paul by inquiring whether, in exchange for his testimony against appellant, he expected preferential treatment on a charge of automobile theft that was pending against him at the time of appellant's trial.[3]

Our determination of whether the state appellate courts erred in denying Grant's ineffective assistance of counsel claims requires us to review the state courts' application of Supreme Court precedent to a particular set of facts. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Here, the state appellate courts did not apply a rule of law that contradicts the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Werts*, 228 F.3d at 204. As such, we find that the state appellate courts' decisions were not contrary to established Supreme Court precedent. However, we must

---

[1] The District Court assigned this case to a Magistrate Judge for a report and recommendation. The Magistrate Judge recommended that Grant's Petition for Writ of Habeas Corpus be denied and a certificate of appealability be denied. The District Court adopted the Magistrate Judge's Report and Recommendation as the opinion of the Court.

[2] These claims were exhausted on direct appeal to the Superior Court of Pennsylvania from Grant's conviction and sentencing.

[3] This claim was exhausted by the Superior Court of Pennsylvania on appeal from the dismissal of Grant's petition brought pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546.

also analyze Grant's ineffectiveness claim under the "unreasonable application" provision of 28 U.S.C. § 2254(d)(1). "Under that provision, the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to [Grant's] ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Id.* While our discussion of the claims is somewhat different than that of the state courts', "[w]e find that under the facts of the case, the Pennsylvania Superior Court's determination that trial counsel rendered effective assistance was not an unreasonable application of *Strickland*." *Id.* Accordingly, we will affirm the judgment of the District Court.[4]

In 1994, Grant was convicted by a jury on separate counts of aggravated assault for the shooting of two men—Duncan Plowden and Marvin Paul.[5] The trial court sentenced him to an aggregate term of incarceration of not less than twenty-two-and-a-half nor more than forty-five years. Testimony at trial revealed the following facts surrounding the shootings. Paul and Plowden were engaged in a conversation when a man approached. After this man greeted Plowden, Paul began to walk away. After taking about six or seven steps, Paul heard the man say to Plowden, "What's that shit you been saying about

---

[4] The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 2241 and 2254. We exercise appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

[5] Grant was also convicted of violating the Uniform Firearms Act: Firearms Not to be Carried Without a License. 18 Pa.C.S.A. § 6106.

me." Paul then heard a bang and looked back to see Plowden falling to the ground. He saw the man holding a black gun in his hand. Paul attempted to run, but the man shot him in the right buttock. As Paul was lying in the street, the man shot him a second time. The man attempted to shoot Paul a third time, but the gun did not go off. At trial, the only direct evidence implicating Grant as the shooter was Paul's in-court identification of him as the shooter, an identification Paul previously made from a photo array shortly after the shooting. Plowden, by contrast, testified that he did not know who shot him and he refused to implicate Grant. The prosecutor's principal theory was that the jury should believe Paul and not Plowden. In addition, the trial court allowed three witnesses to testify that Plowden had told them out of court that Grant was indeed the shooter, all without objection from Grant's counsel. There was no physical or other direct evidence linking Grant to the crime.

Grant asserts that trial counsel was ineffective for failing to object to the three witnesses' testimony regarding Plowden's alleged out-of-court statements that Grant was the shooter. We take each witness's testimony in turn.

Kevin McKnight, Plowden's parole officer, testified that Plowden told him that Grant was the shooter. This testimony contradicted Plowden's immediately preceding testimony that he did not know whether it was Grant who shot him. On direct appeal, the Superior Court of Pennsylvania stated that, "Although this statement qualified as hearsay, counsel was not ineffective for not objecting because there was never any dispute that

Plowden had been shot. Thus, there was no prejudice resulting from the failure to object." This explanation misses the mark. Counsel was not ineffective for failing to object because the testimony was not hearsay; it was impeachment testimony. *See* Pa.R.E., Rule 613; Pa.R.E., Rule 607. The trial court gave a cautionary instruction following McKnight and Detective Ciganik's testimony, explaining that their testimony was admitted for the sole purpose of helping the jurors assess the credibility and weight of the testimony previously given by Plowden. The court instructed the jury that it could not regard the evidence of the earlier inconsistent statement as proof of the truth of anything that was said in the statement. This instruction was repeated at the close of evidence. Thus, counsel's performance did not fall below an objective standard of reasonableness for failure to object. *See Strickland*, 466 U.S. at 688.

City of Pittsburgh Police Detective Stephen Hitchings testified that he got a call from another police detective, George Ciganik, who advised Hitchings that Kevin McKnight told Ciganik that Plowden had identified Grant as the shooter.[6] Detective Hitchings then assembled a six-photograph array which included Grant's picture. He showed these photos to Paul in his hospital room, and Paul positively identified Grant as the person who shot him. On direct appeal, the Superior Court determined that Hitchings'

---

[6] As stated in the immediately preceding paragraph, the District Court gave a limiting instruction following the testimony of parole officer McKnight and Detective Ciganik, cautioning that their testimony of the prior inconsistent statement was only to be considered to help the jury to judge the credibility and weight of the testimony given by Plowden at trial. This instruction was repeated after closing arguments.

testimony falls within the course of police conduct exception to the hearsay rule and as such, trial counsel cannot be deemed ineffective for failing to object. The police conduct rule is not a rule of automatic admissibility. Instead, if defense counsel objects, the court "must balance the prosecution's need for the statements against any prejudice arising therefrom." *Commonwealth v. Jones*, 658 A.2d 746, 751 (Pa. 1995). Our Court has cautioned against the admissibility of these out-of-court statements when it is shown that additional background is unnecessary. *See United States v. Sallins*, 993 F.2d 344, 347 (3d Cir. 1993). However, even if we determined that Grant proved the reasonableness component under *Strickland*, Grant must show that he was actually prejudiced by counsel's deficient performance. Because McKnight and Ciganik had already testified to the same facts, albeit subject to a limiting instruction, Grant cannot show prejudice resulting from the failure to object to Detective Hitchings' testimony. As such, the state court decision resulted in an outcome that can be reasonably justified under *Strickland*.

Finally, Paul testified that Plowden told him that Grant was the shooter during a conversation they had at the hospital some weeks after the shooting. As the Superior Court recognized, this statement was hearsay. The Court stated that "[t]he aforesaid conversation took place after Paul already identified appellant from the photographs. Thus, Paul's identification was not influenced by the conversation and the hearsay statement, therefore, caused no appreciable prejudice when compared to the considerable evidence of appellant's guilt." The effect of Plowden's statement on Paul's

6

identification, however, is besides the point; what matters is the effect of Paul's hearsay testimony on the jury. Again, even if we determined that Grant proved the reasonableness component under *Strickland*, we do not believe the prejudice component has been met. As such, we are satisfied that the Superior Court judgment resulted in an outcome that can be reasonably justified under *Strickland*.

Even if the hearsay statements had been objected to and excluded, there was independent evidence of Grant's guilt. Paul testified in great detail about being shot by Grant at close range. Paul also testified to witnessing Grant shooting Plowden immediately prior. Paul further testified to making an out-of-court identification of Grant as the shooter shortly after the incident. That testimony, coupled with that of Detective Hitchings, which confirmed Paul's prior unequivocal selection of Grant's picture from a six-photograph array, provided strong evidence of Grant's guilt.

Grant also claims that trial counsel was ineffective for not attempting to impeach the credibility of Marvin Paul with an inquiry about whether, in exchange for his testimony against appellant, he expected preferential treatment on a charge of automobile theft that was pending against him at the time of appellant's trial. Paul was arrested and charged with auto theft in March 2004, some ten months after he identified Grant as the shooter from a photo array. The Superior Court decided that this claim lacked merit because Paul had already identified Grant as the shooter before he was charged with auto theft "so there was no reason for Paul to accuse [Grant] falsely in the hope of gaining

favor with police." It is true, however, that whether Paul had a motive for testifying against Grant is distinct from his initial identification. Nevertheless, the evidence of Paul's identification is compelling. Eight days after the shooting, prior to any criminal charges filed against Paul, he identified Grant as the shooter. The trial transcript establishes that Paul, from his hospital bed, positively identified Grant at the time of the shooting, nearly a year before the auto theft charges were brought against him. Not only did Paul testify that, at the time he identified Grant as the shooter from the photo array, he was "one hundred percent" certain Grant was responsible for the shooting, but Detective Hitchings also testified that Paul indicated he was "[one] hundred percent positive." As the Superior Court noted, at the time when Paul implicated Grant and identified him as the shooter, there were no charges against him.

The Superior Court explained that "[w]hen the prejudice prong of the test for finding ineffectiveness fails, the claim may be dismissed. *See Commonwealth v. Thomas*, 783 A.2d 328 (Pa. Super. 2001) (where victim positively identified defendant prior to victim's arrest for unrelated charges, claim that victim's testimony was given to curry favor with the prosecution has no merit and does not establish prejudice)." The Court found that, in light of the evidence presented at trial, Grant could not establish prejudice for counsel's failure to cross-examine Paul about his theft charge. While we realize that Paul's testimony was the only direct evidence linking Grant to the crimes, in light of the previous out-of-court identification, which was corroborated by Detective Hitchings

testimony, as well as the strength of Paul's in-court testimony, we are satisfied that the state court's application of *Strickland* to Grant's ineffectiveness claim was not objectively unreasonable.

Accordingly, we will affirm the judgment of the District Court.